# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Daniel D. Domenico

Civil Action No. 20-cv-00257-DDD

RAYMOND CANO,

     Applicant,

v.

DEAN WILLIAMS, Executive Director, C.D.O.C., and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

     Respondents.

---

## ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS

---

This matter is before the Court on the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Doc. 1) filed *pro se* by Applicant Raymond Cano. Mr. Cano challenges the validity of his conviction in Adams County District Court case number 96CR12. After reviewing the record, the Court finds and concludes that the Application should be denied and the case dismissed with prejudice.

### FACTUAL AND PROCEDURAL BACKGROUND

Mr. Cano was convicted by a jury on one count of first-degree murder for stabbing a fellow gang member, Miguel Larios, at a New Year's Eve party attended by several gang members. According to the Colorado Court of Appeals, "[b]efore his attendance at the party and eventual murder, Larios received multiple threats on his life and had entirely withdrawn from communication with fellow gang members." (Doc. 12-9 at p.3.) Mr. Cano was sentenced to life in prison without the possibility of parole. On

April 20, 2000, the Colorado Court of Appeals affirmed the judgment of conviction. (*See* Doc. 12-4.) In January 2001 the Colorado Supreme Court denied Mr. Cano's petition for writ of certiorari on direct appeal. (*See* Doc. 12-1 at p.20.)

Mr. Cano subsequently filed a postconviction motion pursuant to Rule 35(c) of the Colorado Rules of Criminal Procedure raising several claims that counsel was ineffective, including a claim that trial counsel had a conflict of interest due to simultaneous representation of Mr. Cano and a potential witness at Mr. Cano's trial named Sergio Aguilar. The trial court denied the motion following an evidentiary hearing. On appeal, the Colorado Court of Appeals affirmed in part, reversed in part, and remanded the case to the trial court for further proceedings pertinent to the conflict of interest claim. (*See* Doc. 12-7.) On consolidated review with a case raising a similar issue, the Colorado Supreme Court clarified the appropriate standard that would apply to such a claim predicated on the alleged ineffective assistance of counsel. *West v. People*, 341 P.3d 520 (2015). The trial court again denied postconviction relief and that order was affirmed on December 6, 2018. (*See* Doc. 12-9.) On October 15, 2019, the Colorado Supreme Court denied certiorari review in the postconviction proceedings. (*See* Doc. 12-10.)

Mr. Cano asserts four claims for relief. He contends in Claim 1 that his right to a fair trial was violated when the trial court denied a defense request for a continuance to prepare for trial. Mr. Cano contends in Claim 2 that his Sixth Amendment right to confront the witnesses against him and his Fourteenth Amendment right to a fair

trial were violated by admission of multiple instances of hearsay testimony. In Claim 3, Mr. Cano contends the prosecution committed misconduct during closing arguments in violation of his Fourteenth Amendment right to a fair trial. Mr. Cano finally contends in Claim 4 that his Sixth Amendment right to the effective assistance of counsel was violated because counsel: (a) failed to conduct sufficient investigations that would have allowed discovery of alibi witnesses; (b) was operating under conflicting interests; (c) failed to obtain gang and toxicology experts and failed to communicate effectively with Mr. Cano; (d) failed to call witnesses who would have testified that the testimony of prosecution witnesses was fabricated; and (e) coerced Mr. Cano into waiving a preliminary hearing.

## LEGAL STANDARD

The Court must construe the Application and other papers filed by Mr. Cano liberally because he is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Still, the Court cannot act as an advocate for a *pro se* litigant. *See Hall*, 935 F.2d at 1110.

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Mr. Cano bears the burden of proof under § 2254(d). *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

The Court's inquiry is straightforward "when the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). "In that case, a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id.* When the last state court decision on the merits "does not come accompanied with those reasons . . . the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Id.* The presumption may be rebutted "by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed." *Id.*

The threshold question the Court must answer under § 2254(d)(1) is whether Mr. Cano seeks to apply a rule of law that was clearly established by the Supreme Court at the time the state court adjudicated the claim on its merits. *Greene v. Fisher*, 565 U.S. 34, 38 (2011). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

> Clearly established law consists of Supreme Court holdings
> in cases where the facts are at least closely-related or
> similar to the case *sub judice*. Although the legal rule at
> issue need not have had its genesis in the closely-related or
> similar factual context, the Supreme Court must have
> expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008). If there is no clearly established

federal law, that is the end of the Court's inquiry pursuant to § 2254(d)(1). *See id.* at

1018.

If a clearly established rule of federal law is implicated, the Court must determine

whether the state court's decision was contrary to or an unreasonable application of

that clearly established rule of federal law. *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established
> federal law if: (a) "the state court applies a rule that
> contradicts the governing law set forth in Supreme Court
> cases"; or (b) "the state court confronts a set of facts that
> are materially indistinguishable from a decision of the
> Supreme Court and nevertheless arrives at a result
> different from [that] precedent." *Maynard* [*v. Boone*], 468
> F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks
> and brackets omitted) (quoting *Williams*, 529 U.S. at 405,
> 120 S. Ct. 1495). "The word 'contrary' is commonly
> understood to mean 'diametrically different,' 'opposite in
> character or nature,' or 'mutually opposed.'" *Williams*, 529
> U.S. at 405, 120 S. Ct. 1495 (citation omitted).
>
> A state court decision involves an unreasonable application
> of clearly established federal law when it identifies the
> correct governing legal rule from Supreme Court cases, but
> unreasonably applies it to the facts. *Id.* at 407-08, 120 S.
> Ct. 1495.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an

objective inquiry. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* at 411. A decision is objectively unreasonable "only if all fairminded jurists would agree that the state court got it wrong." *Stouffer v. Trammel*, 738 F.3d 1205, 1221 (10th Cir. 2013) (internal quotation marks omitted). Furthermore,

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks and citation omitted, brackets in original). In conducting this analysis, the Court "must determine what arguments or theories supported or . . . could have supported[] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102. In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen*, 563 U.S. at 181.

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also*

*Richter*, 562 U.S. at 102 (stating "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 562 U.S. at 103.

Section 2254(d)(2) allows the Court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court. Pursuant to § 2254(e)(1) the Court presumes the state court's factual determinations are correct and Mr. Cano bears the burden of rebutting the presumption by clear and convincing evidence. The presumption of correctness applies to factual findings of the trial court as well as state appellate courts. *See Al-Yousif v. Trani*, 779 F.3d 1173, 1181 (10th Cir. 2015). The presumption of correctness also applies to implicit factual findings. *See Ellis v. Raemisch*, 872 F.3d 1064, 1071 n.2 (10th Cir. 2017).

Finally, the Court's analysis is not complete even if Mr. Cano demonstrates the state court decision is contrary to or an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence presented. *See Harmon v. Sharp*, 936 F.3d 1044, 1056 (10th Cir. 2019), *cert. denied*, No. 19-8581, 2020 WL 5882784 (U.S. Oct. 5, 2020). If the requisite showing under § 2254(d) is made, the Court must consider the merits of the constitutional claim

*de novo. See id.* at 1056-57.

If a claim was not adjudicated on the merits in state court, and if the claim is not procedurally barred, the Court also must review the claim *de novo* and the deferential standards of § 2254(d) do not apply. *See id.* at 1057. However, even if a claim is not adjudicated on the merits in state court, the Court still must presume the state court's factual findings pertinent to the claim are correct under § 2254(e). *See id.*

## DISCUSSION

### I.    Claim 1: Denial of Continuance

In Claim 1 Mr. Cano contends he was denied a fair trial because the trial court denied a defense request for a continuance to allow counsel to adequately prepare for trial. According to the facts recited by the Colorado Court of Appeals on direct appeal, defense counsel sought a continuance on the Friday before trial was to begin and renewed the request the following Monday, citing various types of information counsel had not timely received or for other reasons had not yet had an opportunity to review. The prosecution objected on the basis that arrangements had been made to bring witnesses in and the witnesses potentially would not be available if the trial was postponed. In light of the totality of the circumstances, the trial court concluded that good cause for a continuance had not been shown. (*See* Doc. 12-4 at p.4.)

Mr. Cano contends in the Application that a continuance was necessary for two reasons:

> 1) the prosecution had provided incomplete information about its key witnesses or disclosed latter, changed

> statements by these witnesses and counsel would not
> effectively be able to cross-examine them, impeach them
> and allow the jury to properly assess their credibility; and
> 2) testing on potentially exculpatory evidence (knives
> gathered from the murder scene, one of which could have
> been the murder weapon).

(Doc. 1 at p.4.) Mr. Cano lists additional reasons in his Reply that allegedly justified a continuance: late preparation of hearing transcripts by court reporters; a key prosecution witness had moved to California and the telephone number provided to counsel to contact the witness was disconnected; another key witness had been arrested on attempted first degree murder charges stemming from a gang-related drive-by shooting; a third key witness saw the drive-by shooting and had yet to be interviewed; and defense counsel had tried three felony cases in the past twenty-five days and had lost the assistance of a second chair, meaning she had to handle everything herself.

Like the trial court, the Colorado Court of Appeals considered the totality of the circumstances and rejected Mr. Cano's claim that he was denied due process as a result of being denied a continuance. The state court first rejected the argument that the prosecution had not established prejudice if a continuance was granted because "there was a basis for the prosecution's concern and for the court's finding that the prosecution would be prejudiced by a continuance." (Doc. 12-4 at p.5.)

> This was a gang-related murder. The key witnesses for the
> prosecution were gang members. The district attorney
> advised the court that he had had conversations with
> various witnesses who had told him they were leaving the
> jurisdiction when the trial was over. Thus, it was not mere

> speculation to believe that these witnesses would be unavailable if the trial were continued to a date which, based on the court's calendar, would have to be several months later.

(*Id.*)

With respect to the unavailability of test results on knives recovered from the crime scene, the Colorado Court of Appeals reasoned that: the unavailability "was not caused by any intentional discovery violation on the part of the prosecution"; "the trial court ordered that the prosecution could not introduce any knives at trial"; "it was known at the beginning of trial that the knives did not contain any fingerprints or blood which could potentially exculpate defendant"; and the unavailability of impeachment evidence showing one of the knives "could have been the murder weapon" does not "amount[] to a showing of material prejudice or denial of a fair trial." (*Id.* at 6.) The Colorado Court of Appeals rejected the argument regarding incomplete information with respect to criminal histories because "[o]ne of the witnesses whose criminal history was incomplete did not testify" and Mr. Cano was able to bring out the criminal histories of the other witnesses "or, in the case of one witness, at least to establish that the witness had outstanding warrants." (*Id.* at 7.) Finally, with respect to the late disclosure of a witness statement, the Colorado Court of Appeals concluded Mr. Cano did not establish material prejudice or a denial of due process because: "there was no intentional discovery violation on the part of the prosecution"; "defense counsel conceded that the prosecutor had not been dilatory and had given her the statement as soon as he obtained it"; "[t]he trial court offered defense counsel a recess to review

additional new information pertaining to the witness's criminal history before the witness was called"; and "[t]he trial testimony of the witness was relatively brief, and defense counsel was able to cross-examine him." (*Id.*)

It was clearly established when Mr. Cano was convicted that "[t]he matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel." *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964); *see also Morris v. Slappy*, 461 U.S. 1, 11 (1983) ("broad discretion must be granted trial courts on matters of continuances" and "[n]ot every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel."). "[O]nly an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay'" rises to the level of a constitutional violation. *Morris*, 461 U.S. at 11-12 (quoting *Ungar*, 376 U.S. at 589). Significantly, "[t]here are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process." *Ungar*, 376 U.S. at 589. Instead, "[t]he answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Id.*

Mr. Cano is not entitled to relief on Claim 1 under the "contrary to" clause of § 2254(d)(1) because he does not identify any materially indistinguishable Supreme Court decision that would compel a different result. *See House*, 527 F.3d at 1018.

Although Mr. Cano cites *Brady v. Maryland*, 373 U.S. 83 (1963) in addition to *Morris* and *Ungar* in discussing Claim 1 in his Reply, Claim 1 is not a *Brady* claim premised on suppression of favorable evidence. Instead, Claim 1 is premised on the denial of a defense request for a continuance to prepare for trial.

Next, Mr. Cano makes no argument regarding the state court's factual findings pertinent to the denial of a continuance. Thus, he fails to demonstrate the state court's decision with respect to Claim 1 is based on an unreasonable determination of the facts in light of the evidence presented under § 2254(d)(2).

Finally, Mr. Cano is not entitled to relief under the "unreasonable application" clause of § 2254(d)(1). Mr. Cano disagrees with the result the state court reached, but the state court considered the totality of the circumstances and reasonably concluded that denial of the defense motion for a continuance was justified. Given the broad discretion trial courts have on matters of continuances, *see Morris*, 461 U.S. at 11, the Court cannot conclude "all fairminded jurists would agree that the state court got it wrong." *Stouffer*, 738 F.3d at 1221. The motion was not filed until the eve of trial, it was reasonable to conclude the prosecution would be prejudiced by a continuance, and the trial court took steps to eliminate or minimize any potential prejudice to the defense. In short, Mr. Cano fails to demonstrate the state court's analysis and rejection of Claim 1 "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Mr. Cano is therefore not entitled to relief with respect to

Claim 1.

## II.  Claim 2: Witness Confrontation

Mr. Cano contends in Claim 2 that his constitutional rights were violated by admission of multiple instances of hearsay testimony. Claim 2 is presented as a Sixth Amendment Confrontation Clause claim, although Mr. Cano also makes a conclusory reference in the Application to his Fourteenth Amendment right to a fair trial. But he does not present any reasoned argument under the Fourteenth Amendment in the Application, and his arguments in support of Claim 2 in the Reply relate solely to his Sixth Amendment right to confrontation. The Court thus construes Claim 2 only as a Sixth Amendment claim.

Some of the statements Mr. Cano challenges in Claim 2 drew objections from the defense that were sustained. First, the trial court sustained a defense objection to testimony that Mr. Cano and his roommate discussed disposal of the murder weapon and immediately instructed the jury to disregard it. Second, after initially allowing testimony regarding threats by Rachel DeSantos to kill the victim based on the prosecution's representation that DeSantos would be testifying, the trial court later struck the testimony upon learning DeSantos would not be called as a witness and instructed the jury not to consider DeSantos's testimony orally and in its written instructions. The Colorado Court of Appeals concluded Mr. Cano was not entitled to relief regarding these statements because his objections were sustained, the trial court instructed the jury to disregard the hearsay, and "a reviewing court must presume

that the jury acted consistently with the trial court's instruction." (Doc. 12-4 at p. 18.)

The trial court also sustained a defense objection based on lack of foundation to testimony by the victim's girlfriend about a telephone conversation between the victim and DeSantos on the day of the murder. Defense counsel also established during cross-examination of the victim's girlfriend that she could not understand what DeSantos was saying during the conversation. Defense counsel did not object to further testimony by the victim's girlfriend regarding the victim's reaction to the conversation with DeSantos and other telephone conversations. The Colorado Court of Appeals determined the testimony regarding the victim's reaction to the telephone conversations was admissible under the hearsay exception for spontaneous or present sense impressions. (*See* Doc. 12-4 at p.20.)

Mr. Cano also challenges admission of testimony to which defense objections were overruled. This included testimony regarding a death threat made by Mr. Cano's roommate to the victim that was admitted as a statement against the declarant's interest. The trial court also admitted, over a defense objection, testimony by a confidential informant about a telephone conversation between Mr. Cano and DeSantos the day of the murder in which Mr. Cano, referring to the victim, stated "[i]f that [guy] is there, I'm going to take care of him." The Colorado Court of Appeals concluded the trial court did not err in admitting this statement because it was the informant testifying about the defendant's own statement and therefore not hearsay. (*See* Doc. 12-4 at p.24.)

The trial court also overruled defense objections to testimony by law enforcement personnel regarding an alternate suspect, Victor Magana. In particular, a detective testified that he was told by a cousin of Magana that Magana lived in Los Angeles. Another detective testified that, after receiving information from police authorities in California regarding the whereabouts of Magana on the night of the stabbing, he did not find it necessary to do any further investigation about Magana's whereabouts. The Colorado Court of Appeals determined these statements were "admissible as non-hearsay foundation testimony to explain actions taken by the detectives in their investigation of [Magana] as an alternate suspect." (Doc. 12-4 at p.25.)

The Court presumes the Colorado Court of Appeals adjudicated the merits of the Confrontation Clause claim. *See Richter*, 562 U.S. at 99. The parties do not argue that the Confrontation Clause claim was not fairly presented to the state courts, and there is no showing to overcome the presumption that the state court adjudicated the claim on the merits. Therefore, the Court considers Claim 2 under the deferential standards in § 2254(d).

The right of an accused to confront the witnesses against him is guaranteed by the Sixth Amendment to the United States Constitution and applies in both federal and state prosecutions. *See Stevens v. Ortiz*, 465 F.3d 1229, 1235 (10th Cir. 2006). "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845

(1990).

Prior to the Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36 (2004), admission of a hearsay statement did not violate the Confrontation Clause if the declarant was unavailable to testify and the statement bore "adequate 'indicia of reliability.'" *Ohio v. Roberts*, 448 U.S. 56, 66 (1980). The reliability of a hearsay statement could either be inferred from the fact that the statement fell "within a firmly rooted hearsay exception" or established by "a showing of particularized guarantees of trustworthiness." *Id*.

In *Crawford*, the Supreme Court overruled *Roberts* and held that the Confrontation Clause bars the introduction into evidence of out-of-court statements that are testimonial in nature unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. *Crawford*, 541 U.S. at 68. A statement is testimonial if the statement has a "primary purpose" of "establish[ing] or prov[ing] past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822 (2006). Thus, after *Crawford* and *Davis*, the Confrontation Clause has no application to out-of-court statements that are not testimonial. *See Whorton v. Bockting*, 549 U.S. 406, 420 (2007).

Respondents assert that the clearly established federal law for purposes of reviewing Claim 2 under § 2254(d)(1) consists of the Supreme Court's decisions in *Crawford* and *Davis*. Mr. Cano also primarily relies on *Crawford* and *Davis* although he does cite *Roberts* in his Reply. The parties do not address the fact that *Crawford*

and *Davis* were decided after Mr. Cano's conviction became final in 2001 and were not clearly established law when the Confrontation Clause claim was adjudicated on direct appeal. Therefore, it appears that the relevant clearly established federal law for the purpose of Claim 2 would be *Roberts*, if it were still good law. *See Williams*, 529 U.S. at 412 (noting that clearly established law is measured at the time of the relevant state-court adjudication).

But because *Roberts* is no longer good law, the Court will look to *Crawford* and *Davis*. Under § 2254(a), relief "is available only to state prisoners who currently are being held in violation of an existing constitutional right, not to inmates who at one point might have been able to show that a since-overruled Supreme Court or lower court precedent would have granted them relief." *Desai v. Booker*, 538 F.3d 424, 428 (6th Cir. 2008); *see also Mitchell*, 902 F.3d at 164 ("It would be anomalous to grant habeas corpus relief to Mitchell because of the introduction of evidence that would be admissible under current constitutional standards at a retrial notwithstanding the previous Confrontation Clause error.").

Mr. Cano fails to demonstrate he currently is being held in custody in violation of his rights under the Confrontation Clause. Regarding the statements to which defense objections were sustained, the jury was instructed to disregard the statements and the Court assumes the jury followed the instructions. *See Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (noting the existence of an "almost invariable assumption of the law that jurors follow their instructions"); *see also Tennessee v. Street*, 471 U.S. 409, 415

n.6 (1985) ("The assumption that jurors are able to follow the court's instructions fully applies when rights guaranteed by the Confrontation Clause are at issue.").

Regarding the death threats made by Mr. Cano's roommate and Mr. Cano himself, those statements are not testimonial hearsay. *See, e.g. Desai*, 538 F.3d at 427 (under *Crawford* and *Davis*, the Confrontation Clause does not apply to nontestimonial hearsay such as friend-to-friend confession); *United States v. Watson*, 525 F.3d 583, 589 (7th Cir. 2008) ("A statement unwittingly made to a confidential informant and recorded by the Government is not 'testimonial' for Confrontation Clause purposes."). Similarly, admission of testimony regarding the victim's reaction to telephone conversations on the day of the stabbing did not violate the Confrontation Clause because those statements also are not testimonial. *See Davis*, 547 U.S. at 822 (A statement is testimonial if the statement has a "primary purpose" of "establish[ing] or prov[ing] past events potentially relevant to later criminal prosecution.").

Finally, no Confrontation Clause violation occurred with respect to the law enforcement testimony regarding the alternate suspect Magana because that testimony was not admitted for the truth of the matter asserted (i.e., not for the proposition that Magana had an alibi for the crime). *See Street*, 471 U.S. at 414 ("The *nonhearsay* aspect of Peele's confession – not to prove what happened at the murder scene but to prove what happened when respondent confessed – raises no Confrontation Clause concerns."); *see also United States v. Whittle*, 223 F. Supp.3d 671, 678 (W.D. Ky. 2016), *aff'd* 713 F. App'x 457 (6th Cir. 2017) (where out-of-court

statements of a nontestifying individual are introduced into evidence solely to provide foundation or context for understanding responses to those statements, the statements that are offered for a non-hearsay purpose and the introduction of the evidence does not violate the defendant's rights). Instead, that testimony was offered for the non-hearsay purpose of giving context for the detective's investigation, including the detective's outreach to California agencies into the whereabouts of Magana on the night of the crime, and the trial court disallowed the detective from offering testimony on what that investigation revealed about Magana's whereabouts.

Mr. Cano also fails to demonstrate the state court's decision with respect to the Confrontation Clause claim is based on an unreasonable determination of the facts in light of the evidence presented under § 2254(d)(2). To the extent Mr. Cano may be challenging any factual determinations, he fails to present clear and convincing evidence to rebut the presumption that the state court's factual determinations are correct. *See* 28 U.S.C. § 2254(e)(1). Mr. Cano therefore is not entitled to relief with respect to Claim 2.

## III.    Claim 3: Prosecutorial Misconduct

In Claim 3, Mr. Cano contends the prosecution committed misconduct during closing arguments in violation of his Fourteenth Amendment right to a fair trial. Claim 3 is premised on four specific statements. First, Mr. Cano contends the burden of proof was improperly shifted to the defense when, during rebuttal closing, the prosecutor stated "[s]he says the real killer is either out there or on the stand but it

isn't her client. The real killer is out there. Have you heard any evidence he is out there" (Doc. 12-4 at pp.26-27.) This is the only statement Mr. Cano objected to at trial, and the Colorado Court of Appeals addressed it as follows:

> The prosecutor made his statement in direct response to defense counsel's argument, and thus was entitled to some latitude. Nevertheless, to the extent the statement can be understood as shifting the burden of proof to defendant, it was improper.
>
> The court did not expressly sustain defendant's objection, but instead simply reminded the jurors that this was merely argument and that they were bound by the instructions given to them and the evidence in the case. Those instructions told the jurors that defendant was presumed innocent, that the burden of proof as to all of the elements of the charged offense was on the prosecution, and that they could not infer anything from defendant's silence or from the number of witnesses appearing for or against a proposition.
>
> Considering the prosecutor's statement in the context of the argument and evidence as a whole and in light of the court's instructions, we cannot conclude that, even if the statement was improper, the court's failure explicitly to sustain defense counsel's objection amounted to an abuse of discretion or a denial of justice to defendant. See People v. Holloway, supra; People v. Gillis, 883 P.2d 554 (Colo. App. 1994).

(Doc. 12-4 at p. 27.)

Mr. Cano did not object to the other three statements challenged in Claim 3 and they were reviewed by the Colorado Court of Appeals for plain error. Under Colorado state law, "[i]mproper closing argument amounts to plain error only when a reviewing court, considering the entire record, can determine with fair assurance that the

misconduct so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." (*Id.* at p.28.) The state court described the statements and reasoned as follows in concluding no plain error occurred:

> Defendant characterizes the prosecutor's remark, "it is uncontroverted who did the stabbing," as an improper argument that he had to put on evidence that someone else was guilty. However, as we have previously noted, the jury was properly instructed regarding the burden of proof and the presumption of innocence. We presume that the jury heeded the court's instructions. See People v. Gillis, supra.
>
> The prosecutor stated during rebuttal closing that, although witness J.A. may have given inconsistent descriptions to the police, "the bottom line is that she is not lying. She is trying to assist the police officer in the investigation that has happened within minutes of seeing someone she loved very much just savagely killed in front of her. And that's what she does all along." We do not view this statement, made in response to defense counsel's lengthy argument regarding J.A.'s credibility and motivation for testifying, as amounting to plain error. See Wilson v. People, supra; People v. Vialpando, supra.
>
> Finally, in response to defense counsel's argument that the police had failed to investigate other individuals who might have killed the victim, the prosecutor pointed out that one of these individuals had tried to render medical assistance to the victim, and added: "Is that the act of someone who was involved in this bizarre conspiracy that the defense is hoping you buy?" Although the comment was improper to the extent it could be understood as denigrating opposing counsel, see People v. Jones, 832 P.2d 1036 (Colo. App. 1991), we again conclude that this comment, either standing alone or when considered together with the other challenged remarks, did not so undermine the fundamental fairness of the trial as to case serious doubt on the reliability of the judgment of conviction. See Wilson

v. People, supra. Accordingly, the challenged remark does
not constitute plain error.

(Doc. 12-4 at pp.28-29.)

The clearly established federal law relevant to a constitutional claim challenging a prosecutor's allegedly improper comments is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168 (1986). *See Parker v. Matthews*, 567 U.S. 37, 45 (2012) (per curiam). In *Darden*, the Supreme Court explained that a prosecutor's improper comments violate the Constitution only when the misconduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden*, 477 U.S. at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). To determine whether prosecutorial misconduct rendered the trial fundamentally unfair the Court must consider "the totality of the circumstances, evaluating the prosecutor's conduct in the context of the whole trial." *Jackson v. Shanks*, 143 F.3d 1313, 1322 (10th Cir. 1998). "[T]he *Darden* standard is a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations.'" *Parker*, 567 U.S. at 48 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Mr. Cano makes no argument regarding his prosecutorial misconduct claim under the "contrary to" clause of § 2254(d)(1) or under § 2254(d)(2). That is, he does not cite any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result, *see House*, 527 F.3d at 1018, and he does not contend the state court decision was based on an unreasonable determination of the facts in light of the evidence presented.

Therefore, the Court's review of Claim 3 is limited to whether the state court's decision is an unreasonable application of clearly established federal law under § 2254(d)(1).

Mr. Cano fails to demonstrate the state court unreasonably applied the very general *Darden* standard. Most importantly, even if the challenged statements are "understood as directing the jury's attention to inappropriate considerations," that is not enough to demonstrate the state court's "rejection of the *Darden* prosecutorial misconduct claim 'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Parker*, 567 U.S. at 47 (quoting *Richter*, 562 U.S. at 103). Here, it was not unreasonable to conclude there was no fundamental unfairness because the jury was properly instructed that Mr. Cano was presumed innocent, that the burden of proof as to all of the elements was on the prosecution, and that they could not infer anything from Mr. Cano's silence or from the number of witnesses appearing for or against a proposition. As noted above in the context of Claim 2, there is an "almost invariable assumption of the law that jurors follow their instructions." *Richardson*, 481 U.S. at 206. The trial court's cautionary instructions to the jury offered in response to the defense objection to the first challenged statement also is a relevant consideration in determining whether Mr. Cano's trial was fundamentally unfair. *Le v. Mullin*, 311 F.3d 1002, 1013 (10th Cir 2002) (per curiam). Furthermore, counsel's failure to object to the other three challenged comments, "while not dispositive, is also relevant to a fundamental fairness assessment." *Id.*

Based on a review of the state court record, the Court cannot conclude that the state court's application of the very general *Darden* standard "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Therefore, Mr. Cano is not entitled to relief with respect to Claim 3.

## IV. Claim 4: Ineffective Assistance of Counsel

Mr. Cano contends in Claim 4 that his Sixth Amendment right to the effective assistance of counsel was violated because counsel: (a) failed to conduct sufficient investigations that would have allowed discovery of alibi witnesses; (b) was operating under conflicting interests; (c)(i) failed to obtain gang and toxicology experts and (ii) failed to communicate effectively with Mr. Cano; (d) failed to call witnesses who would have testified that the testimony of prosecution witnesses was fabricated; and (e) coerced Mr. Cano into waiving a preliminary hearing.

To establish counsel was ineffective Mr. Cano must demonstrate both that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance resulted in prejudice to his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). If Mr. Cano fails to satisfy either prong of the *Strickland* test, the ineffective assistance of counsel claim must be dismissed. *See id.* at 697.

"Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. There is "a strong presumption" that counsel's performance falls within the range of

"reasonable professional assistance." *Id.* It is Mr. Cano's burden to overcome this presumption by showing that the alleged errors were not sound strategy under the circumstances. *See id.*

In the context of federal habeas corpus review under § 2254(d), a state prisoner "faces an even greater challenge." *Harmon*, 936 F.3d at 1058. "When assessing a state prisoner's ineffective-assistance-of-counsel claims on habeas review, [federal courts] defer to the state court's determination that counsel's performance was not deficient and, further, to the attorney's decision in how to best represent a client." *Id.* (internal quotation marks and brackets omitted). Thus, review under § 2254(d) is doubly deferential. *See id.* Furthermore,

> [f]ederal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether *any* reasonable argument exists that counsel satisfied *Strickland's* deferential standard. And because the *Strickland* standard is a general standard, a state court has . . . more latitude to reasonably determine that a defendant has *not* satisfied that standard.

*Id.* (citations and internal quotation marks omitted).

Under the prejudice prong Mr. Cano must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*; *see also Richter*, 562 U.S. at 112 (stating that "[t]he likelihood of a different result must be substantial, not just

25

conceivable."). In determining whether Mr. Cano has established prejudice, the Court must look at the totality of the evidence and not just the evidence that is helpful to the defense. *See Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999).

### A. Failure to Investigate/Call Witnesses

Three subparts of Claim 4 are relevant to the defense investigation and witnesses. Mr. Cano contends in Claim 4(a) that counsel failed to conduct a sufficient investigation that would have led to the discovery of alibi witnesses. According to Mr. Cano, the prosecution's theory of the motive for the stabbing was that the victim had destroyed the engine in a borrowed car in the summer of 1995 and was confronted by three individuals at that time, one of whom was Mr. Cano. Mr. Cano maintains he was working in New Mexico during the summer of 1995 but counsel failed to investigate and present evidence to substantiate that fact through Mr. Cano's employer, coworkers, and cashed paychecks. Mr. Cano also asserts he was with his sister on the night of the stabbing and was not even at the party where the stabbing occurred, although he concedes "the failure to investigate/interview Mr. Cano's sister could have been strategic, as counsel assessed that the jury would feel she was lying to protect her brother." (Doc. 25 at p.14.)

In Claim 4(c)(i) Mr. Cano reiterates that counsel failed to investigate and call witnesses pertinent to his alibis for the summer of 1995 and the night of the stabbing. He also contends counsel should have presented a gang expert to testify "as to gang culture/loyalty, allowing in turn for the jury to be able to assess the reliability of the

witnesses against Mr. Cano, based upon their gang affiliation." (Doc. 1 at p.12.) Although Mr. Cano also refers to a toxicology expert in Claim 4(c)(i), he does not allege any facts pertinent to a toxicology expert. Finally, Mr. Cano contends in Claim 4(c)(i) that counsel "failed to complete review of thousands of pages of discovery, which would have (had it been conducted), impeach[ed] key witnesses against Mr. Cano." (*Id.*)

In Claim 4(d) Mr. Cano contends counsel failed to call witnesses who would have contradicted and disproved the testimony of prosecution witnesses.

> There were several witnesses who testified to such facts as Mr. Cano was seen with a knife immediately prior to the stabbing and then also testified as to their location, which would have easily been refuted by statements from others that were contained in the discovery, if these witnesses had been called. Moreover, there were other witnesses who would have provided exculpatory and impeachment testimony as to what occurred immediately prior to the stabbing death of the victim that is his location, who he confronted, etc. In addition, trial counsel could have provided conflicting witness testimony as to the description or and [sic] what the person who stabbed the victim was wearing, in turn which would have undermined or impeached the alleged "eye-witness" testimony provided by the prosecution. Had such witnesses been called, there is a reasonable probability that Mr. Cano would not have been convicted, as not only did the witnesses' testimony change over the course of time, but it significantly varied from that which immediately followed the stabbing death of the victim (presumably the initial statements by these witnesses would have been more reliable as they would be considered excited utterances, rather than reflective statements which were made in order to not involve a party to which the witnesses had a vested interest in.)

(Doc. 1 at p.13.)

The Colorado Court of Appeals rejected Mr. Cano's ineffective assistance of counsel

claims premised on the alleged failure to investigate and call defense witnesses because he "did not allege specific facts showing what other evidence would have led to a different result" and he "failed to identify any witnesses who could have provided exculpatory testimony." (Doc. 12-9 at pp. 22-23.) The state court specifically noted with respect to alibi and expert witnesses that Mr. Cano "did not suggest any alibi witnesses [and] did not point to any expert witnesses or testimony that would have been helpful." (*Id.*)

Mr. Cano is not entitled to relief on these ineffective assistance of counsel claims under the "contrary to" clause of § 2254(d)(1) because he does not identify any materially indistinguishable Supreme Court decision that would compel a different result. *See House*, 527 F.3d at 1018.

Next, Mr. Cano fails to demonstrate the state court's decision is based on an unreasonable determination of the facts in light of the evidence presented under § 2254(d)(2). Notably, although Mr. Cano identifies specific alibi witnesses, he fails to demonstrate that the alibi witnesses or any other specific witnesses counsel allegedly failed to call, or the substance of the testimony they would have provided, was identified in the state court proceedings.

Finally, based on the presumptively correct factual determination that Mr. Cano failed to identify the specific witnesses counsel failed to investigate and call, he fails to demonstrate the state court's rejection of these ineffective assistance of counsel claims "was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Most importantly, it was not unreasonable to conclude that speculative and conclusory allegations are not sufficient under *Strickland. See Byrd*, 645 F.3d at 1168 ("mere speculation is not sufficient" to demonstrate prejudice under *Strickland*); *see also Weatherall v. Sloan*, 415 F. App'x 846, 849 (10th Cir. 2011) ("We conclude that the Colorado Court of Appeals's decision was not contrary to or an unreasonable application of federal law because [the applicant] made no more than vague and conclusory allegations to support his conspiracy claim.").

Mr. Cano apparently concedes that these ineffective assistance of counsel claims are speculative, but he asserts that the claims are speculative only because there was no evidentiary development of the claims in state court. Thus, Mr. Cano asks the Court to appoint counsel and allow evidentiary development of these claims. However, as noted above, the Court's "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen*, 563 U.S. at 181.

Mr. Cano also asserts that Colorado law does not require a *pro se* defendant to provide evidentiary support for his claims in a postconviction motion, but this assertion ignores the fact, which Mr. Cano concedes, that he was represented by counsel during the state court postconviction proceedings. Mr. Cano apparently also contends postconviction counsel was ineffective but this argument cannot save the ineffective assistance of counsel claims asserted in the Application because there is no

constitutional right to counsel in postconviction proceedings. *See Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987); *see also* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.").

For these reasons, Mr. Cano is not entitled to relief with respect to claims 4(a), 4(c)(i), and 4(d).

###   B.   Effective Communication

Mr. Cano contends in Claim 4(c)(ii) that counsel failed to communicate effectively with him. He alleges in support of this claim only that "trial counsel wouldn't even listen to Mr. Cano about the fact that he couldn't have possibly been the third party who confronted [t]he victim following destruction of the brothers' vehicle, as he wasn't even in Colorado" and counsel "fail[ed] to discuss the aspects of the case with Mr. Cano who would have provided relevant information as to his innocence and motives for witness[es] to lie." (Doc. 1 at p.12.) The Colorado Court of Appeals rejected this ineffective assistance of counsel claim because "nothing in the record supports the conclusion that increased communication would have led to a different outcome or increased the probability of an acquittal." (Doc. 12-9 at pp.22-23.)

Mr. Cano fails to demonstrate he is entitled to relief with respect to Claim 4(c)(ii) for the same reasons discussed in connection with claims 4(a), 4(c)(i), and 4(d). That is, he is not entitled to relief under the "contrary to" clause of § 2254(d)(1) because he does not cite any contradictory governing law set forth in Supreme Court cases or any

materially indistinguishable Supreme Court decision that would compel a different result, *see House*, 527 F.3d at 1018; he is not entitled to relief under § 2254(d)(2) because he does not contend the state court decision was based on an unreasonable determination of the facts in light of the evidence presented; and he is not entitled to relief under the "unreasonable application" clause of § 2254(d)(1) because the state court's conclusion that conclusory and speculative allegations of prejudice are not sufficient to demonstrate prejudice under *Strickland* is not unreasonable.

## C.    Conflict of Interest

Mr. Cano contends in Claim 4(b) that counsel had a conflict of interest because he was represented by the public defender and attorneys in the same regional public defender's office simultaneously represented a potential witness in his case, Sergio Aguilar, after Aguilar was arrested and charged in an unrelated case. Aguilar did not testify at Mr. Cano's trial even though, according to Mr. Cano, Aguilar was an alternate suspect in the stabbing because Aguilar "stated he had seen the murder of the victim, was associated with the same gang who had problems with the victim, who most certainly was at least minimally complicit in the murder of the victm [sic] and who did not identify Mr. Cano as the murdered [sic]." (Doc. 1 at p.11.)

The Colorado Court of Appeals described the relevant factual background for this claim of ineffective assistance of counsel as follows:

> Miguel Larios was fatally stabbed while ascending a stairway at a New Year's Eve house party in 1995 attended by several gang members along with their girlfriends and sisters. Before his attendance at the party and eventual

murder, Larios received multiple threats on his life and had entirely withdrawn from communication with fellow gang members.

Immediately following the stabbing, Cano left the party in his car while four gang members, including Sergio Aguilar, carried Larios to Aguilar's car. Aguilar drove Larios toward the hospital, with Larios's girlfriend, Jennifer Arrieta, as a passenger, before pulling over when they encountered a fire engine and ambulance. After the ambulance staff retrieved Larios from the car, a police officer questioned Arrieta and Aguilar, and officers impounded Aguilar's vehicle, in which they later uncovered a "gang book" identifying names of gang members. During the officers' questioning, Arrieta provided a vague description of the killer, but when officers took her back to the party, she stated that the killer was no longer there. Arrieta later identified Cano as the killer.

At Cano's pretrial hearing, Aguilar detailed his perception of the events surrounding Larios's murder. Following Aguilar's testimony, Cano's counsel – Adams County public defender Jaydee Bachman – elected to continue Aguilar's trial subpoena. However, Aguilar was not called to testify at Cano's trial.

At the beginning of Cano's trial, the district attorney's office notified Bachman of Aguilar's arrest for an unrelated crime, but Bachman remained unaware until after Cano's trial had concluded that a public defender from the Adams County office had entered an appearance on behalf of Aguilar in the unrelated case.

(Doc. 12-9 at pp.3-4.)

Mr. Cano does not argue or demonstrate that the resolution of Claim 4(b) by the state courts was based on an unreasonable determination of the facts in light of the evidence presented under § 2254(d)(2). Therefore, the Court's review of Claim 4(b) is limited to whether the state court's decision was contrary to or an unreasonable

application of clearly established federal law under § 2254(d)(1).

As noted above, the threshold question the Court must answer under § 2254(d)(1) is whether Mr. Cano seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams*, 529 U.S. at 390. Ordinarily, as with Mr. Cano's other ineffective assistance of counsel claims discussed above, the relevant clearly established law for a claim that counsel was ineffective is the two-prong test in *Strickland*. However, a different analysis applies to certain Sixth Amendment claims involving a complete denial of counsel or conflicted counsel. For example, prejudice is presumed when there is an "[a]ctual or constructive denial of the assistance of counsel altogether." *Strickland*, 466 U.S. at 692. Relevant to the instant action, a more limited presumption of prejudice applies "if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected [counsel's] performance.'" *Strickland*, 466 U.S. at 692 (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 348, 350 (1980)). Critical to Mr. Cano's claim that counsel was ineffective because of a conflict of interest, the Supreme Court has not applied *Cuyler's* presumption of prejudice outside the context of defense counsel's concurrent representation of multiple defendants in the same criminal proceeding. *See Mickens v. Taylor*, 535 U.S. 162, 175-76 (2002) (stating it is "an open question" whether the holding in *Cuyler* applies outside the context of concurrent representation of multiple defendants).

In Mr. Cano's state court postconviction proceedings, the Colorado Supreme Court

addressed the question of how to properly define an "adverse effect" when a defendant alleges a conflict of interest predicated on concurrent or successive representation of witnesses against the defendant. In answering this question the Colorado Supreme Court adopted a three-part test announced in *United States v. Nicholson*, 611 F.3d 191 (4th Cir. 2010).

> In order to prevail on an ineffective assistance of counsel claim predicated on trial counsel's alleged conflict of interest arising from concurrent or successive representation of trial witnesses against a defendant, we hold that the defendant must show by a preponderance of the evidence both a conflict of interest *and* an adverse effect resulting from that conflict. To show an adverse effect, a defendant must (1) identify a plausible alternative defense strategy or tactic that trial counsel could have pursued, (2) show that the alternative strategy or tactic was objectively reasonable under the facts known to counsel at the time of the strategic decision, and (3) establish that counsel's failure to pursue the strategy or tactic was linked to the actual conflict. A defendant may prove the link under the third prong by showing that the alternative strategy or tactic was inherently in conflict with counsel's other loyalties or interests or by showing that the alternative strategy or tactic was not undertaken due to those other loyalties or interests.

*West*, 341 P.3d at 534. On remand, the trial court determined Mr. Cano did not suffer any adverse effect from the alleged conflict of interest.

On appeal to the Colorado Court of Appeals, it was uncontroverted that counsel for Mr. Cano labored under a conflict of interest even though "the overlap in representation was *de minimis*." (*See* Doc. 12-9 at p.10 & n.2.) The Colorado Court of Appeals thus focused on the seven alternative strategies proffered by Mr. Cano to

show an adverse effect. The seven proffered strategies were the following:

> (1) introduction of Aguilar's pretrial testimony to call into question whether Cano attended the party; (2) introduction of Aguilar's testimony that he did not pick Cano out of a police lineup; (3) testimony that Aguilar knew and was familiar with Cano and was on the stairs when Larios was stabbed, but was unable to identify the perpetrator; (4) testimony that Aguilar did not see anyone in the kitchen holding a knife immediately after the stabbing; (5) testimony from Aguilar to lay a foundation to admit into evidence the gang book recovered from Aguilar's car; (6) Aguilar was an alternative suspect or was complicit in a gang-orchestrated hit on Larios; (7) use of confidential information from Aguilar's pending trial on an unrelated crime to cross-examine Amber Madrigal, Aguilar's girlfriend, to demonstrate that she testified against Cano to avoid her own criminal liability.

(*Id.* at pp.10-11.) The Colorado Court of Appeals rejected the first five proffered strategies based on the trial court's factual finding that Aguilar would not have been a credible witness. (*Id.* at pp.13-14.) The Colorado Court of Appeals rejected the alternate suspect strategy "because the defense failed to establish a nonspeculative connection between the alternate suspect and the crime charged." (*Id.* at p.16.) Finally, the Colorado Court of Appeals determined the seventh proffered strategy was unreasonable because Madrigal's testimony was likely inadmissible. (*Id.* at p.19.)

Mr. Cano fails to demonstrate he is entitled to relief with respect to the conflict of interest alleged in Claim 4(b). Most importantly, because Claim 4(b) is not premised on concurrent representation of multiple defendants in the same proceeding, there is no clearly established federal law to be applied under § 2254(d)(1). *See Smith v. Hofbauer*, 312 F.3d 809, 818 (6th Cir. 2002) (Petitioner's claim does not rest upon

clearly established federal law because *Cuyler* applies "only to joint representation and the Supreme Court has yet to extend [*Cuyler's*] reach to any other type of conflict."); *see also Schwab v. Crosby*, 451 F.3d 1308, 1328 (11th Cir. 2006) (a decision that *Cuyler's* presumption of prejudice does not apply outside the context of concurrent multiple legal representation is not contrary to or an unreasonable application of clearly established federal law).

Mr. Cano apparently recognizes there is no clearly established federal law applicable to the specific conflict of interest claim he is asserting because he contends "that the application of the *Cuyler* standard should be extended to this situation . . . ." (Doc. 25 at p.21.) This Court may not do so. *See White v. Woodall*, 572 U.S. 415, 426 (2014) (noting that "'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'") (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)). To the extent Mr. Cano's conflict of interest claim relies on an analysis of the three-part "adverse effect" test adopted by the Colorado Supreme Court and any lower federal courts, those rulings are not decisions of the United States Supreme Court and cannot be the source of clearly established federal law for the purpose of § 2254(d)(1). *See Williams*, 529 U.S. at 412 (clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."). As noted above, the absence of clearly established federal law ends the Court's inquiry under § 2254(d)(1). *See House*, 527 F.3d at 1018.

Finally, even if *Cuyler's* presumption of prejudice does extend beyond the specific type of conflict at issue in *Cuyler, see, e.g., Eldridge v. Bear*, -- F. App'x --, No. 19-7047, 2020 WL 6375091 at **5-7 (10th Cir. Oct. 30, 2020) (applying *Cuyler* in a case involving common representation in separate proceedings of brothers accused of similar crimes by the same complaining witness), the Court still cannot conclude the state court's rejection of this ineffective assistance of counsel claim is unreasonable. Mr. Cano would still have to demonstrate that the state court was wholly unreasonable in rejecting his argument that an actual conflict of interest adversely affected counsel's performance. *See id.* at *7. Mr. Cano fails to demonstrate the state court's rejection of his adverse effect arguments "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

For these reasons, the Court finds that Mr. Cano is not entitled to relief with respect to Claim 4(b).

### D.    Waiver of Preliminary Hearing

In his final ineffective assistance of counsel claim, (4(e)), Mr. Cano alleged counsel coerced him to waive a preliminary hearing. Mr. Cano withdrew this claim in his Reply. (*See* Doc. 25 at p. 27.)

## CONCLUSION

For the reasons state herein, it is ORDERED that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Doc. 1) is DENIED, and this case is

DISMISSED WITH PREJUDICE. It is further ORDERED that there is no basis on

which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c).

DATED: May 6, 2021                    BY THE COURT:

Hon. Daniel D. Domenico
United States District Judge